FILED

2016 Sep-16  PM 05:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **TIMOTHY McCLUNG,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:14-CV-2493-MHH** |
| | } | |
| **CAROLYN W. COLVIN,** | } | |
| **Commissioner of the** | } | |
| **Social Security Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), plaintiff Timothy McClung seeks judicial review of a final adverse decision of the Commissioner of Social Security.   The Commissioner denied Mr. McClung's claims for disability insurance benefits and supplemental security income.   After careful review, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Mr. McClung applied for a period of disability and disability insurance benefits and supplemental security income on June 30, 2011.  (Doc. 6-6, pp. 2-11). Mr. McClung alleges that his disability began on January 11, 2010.  (Doc. 6-5, p.

57).[1]  The Commissioner initially denied Mr. McClung's claims on September 13, 2011.  (Doc. 6-5, pp. 2-6).   Mr. McClung requested a hearing before an Administrative Law Judge (ALJ).  (Doc. 6-5, pp. 10-11).  The ALJ issued an unfavorable decision on June 21, 2013.  (Doc. 6-3, p. 53).  On November 10, 2014, the Appeals Council declined Mr. McClung's request for review (Doc. 6-3, pp. 2-6), making the Commissioner's decision final and a proper candidate for this Court's judicial review.  *See* 42 U.S.C §§ 405(g), 1383(c).

## II.  STANDARD OF REVIEW

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'"  *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the

---

[1] Mr. McClung initially asserted that the onset date was August 31, 2008.  (Doc. 6-6, pp. 2, 6).

ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If the ALJ's factual findings are supported by substantial evidence, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.   SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that he is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Mr. McClung has not engaged in substantial gainful activity since January 11, 2010, the alleged onset date.  (Doc. 6-3, p. 58). The ALJ determined that Mr. McClung suffers from the following severe impairments: diabetes mellitus and depressive disorder.  (Doc. 6-3, p. 58).   The ALJ also found that Mr. McClung has the following non-severe impairments: status post pancreas and spleen removal, history of alcoholism, dental disease, eczema, cellulitis, tobacco use, and benign hypertension.  (Doc. 6-3, p. 59).  Based on a review of the medical evidence, the ALJ concluded that Mr. McClung does not have an impairment or a combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Doc. 6-3, pp. 59-61).

Next, the ALJ evaluated Mr. McClung's residual functional capacity in light of Mr. McClung's impairments.  The ALJ determined that Mr. McClung has the RFC to perform:

> light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except he can lift and carry twenty pounds occasionally and ten pounds frequently.  He can stand or walk in combination for six hours in an eight-hour work day.  He can frequently climb, balance, stoop, kneel, crouch, or crawl.  He cannot perform in concentrated exposure to work hazards.  He can understand, remember and complete simple tasks, although concentration for detailed tasks would be limited at times by emotional factors.  He can maintain attention sufficiently to complete simple one-two step tasks for periods of at least two hours without the need for special supervision or extra work breaks.  He can

maintain basic standards of personal hygiene and grooming and can complete an eight-hour workday with customary breaks. He would function best with a flexible schedule in a well-spaced work setting. He can tolerate casual, non-intense interaction with the public and co-workers. Any supervision or criticism should be supportive and non-confrontational. Any changes in the work environment or work expectations should be infrequent and gradually introduced. He would need to have breaks from work that would allow him to check blood sugar and administer medications as appropriate or may need to have a snack to eat. He may have occasions due to the need for medical treatment that he would be absent from the work place for an eight-hour period or longer.

(Doc. 6-3, pp. 61-62). Based on this RFC, the ALJ concluded that Mr. McClung is not able to perform his past relevant work as a tube cutter, packer, dryer operator, or forklift operator. (Doc. 6-3, p. 65).

Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Mr. McClung can perform, including parts assembler, bakery worker, and hand packer. (Doc. 6-3, p. 66). Accordingly, the ALJ determined that Mr. McClung has not been under a disability within the meaning of the Social Security Act. (Doc. 6-3, p. 66).

## IV.   ANALYSIS

Mr. McClung argues that he is entitled to relief from the ALJ's decision because: (1) the ALJ erred in failing to accord proper weight to the treating physician's opinion and erred in failing to state specific reasons for rejecting the treating physician's opinion; (2) the ALJ erred in assigning less weight to the consultative psychologist's opinions and in assigning more weight to a non-

examining physician's opinion; (3) the ALJ erred in refusing to allow Mr. McClung's mother to testify at the administrative hearing; (4) substantial evidence does not support the ALJ's finding that Mr. McClung retains RFC to perform light work; (5) the ALJ is biased against claimants, and his bias tainted his denial of benefits; (6) Mr. McClung meets listing 12.05(C) and/or 12.05(D) or an equivalent listing; (7) the ALJ failed to consider all of Mr. McClung's severe impairments; (8) the ALJ failed to consider claimant's combination of impairments in determining disability; and (9) the ALJ failed to state adequate reasons for finding Mr. McClung's testimony not credible.  The Court examines each issue in turn.

## A.     The ALJ properly evaluated the medical opinion evidence.

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel,* 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)); *see also McClurkin v. Social Sec. Admin.*, 625 Fed. Appx. 960, 962 (11th Cir. 2015) (same).[2]  An ALJ must give considerable weight to a treating physician's medical opinion if the opinion is supported by the evidence and consistent with the doctor's own records.  *See Winschel*, 631 F.3d at 1179.  An ALJ may refuse to give the opinion of a treating physician "substantial or considerable weight . . . [if] 'good

---

[2] After both parties submitted their briefs, Mr. McClung filed a motion to allow supplemental authority.  Mr. McClung attached to his motion the *McClurkin* opinion.  Mr. McClung's motion provides no legal argument regarding *McClurkin's* application to this case.  (Doc. 13).  The Court has reviewed and considered the *McClurkin* decision.  The Court asks the Clerk to please TERM Doc. 13.

cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41; *see also Crawford*, 363 F.3d at 1159. "The ALJ must clearly articulate the reasons for giving less weight to a treating physician's opinion, and the failure to do so constitutes error." *Gaskin*, 533 Fed. Appx. at 931.

The opinion of a one-time examiner is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986)); *see also Eyre v. Comm'r, Soc. Sec. Admin.*, 586 Fed. Appx. 521, 523 (11th Cir. 2014) ("The ALJ owes no deference to the opinion of a physician who conducted a single examination: as such a physician is not a treating physician.").

The "opinions of nonexamining, reviewing physicians, when contrary to the opinion of a treating physician, are entitled to little weight and do not, 'taken alone, constitute substantial evidence.'" *Gray v. Comm'r of Soc. Sec.*, 550 Fed. Appx. 850, 854 (11th Cir. 2013) (per curiam) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)). Nevertheless, if an ALJ properly discounts a treating physician's opinion, then an ALJ may rely on contrary opinions of non-examining

physicians. *See Wainwright v. Comm'r of Soc. Sec.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam) (holding that the ALJ properly assigned substantial weight to non-examining sources when he rejected a treating psychologist's opinion and stated proper reasons for doing so); *Ogranaja v. Comm'r of Soc. Sec.*, 186 Fed. Appx. 848, 850-51 (11th Cir. 2006) (per curiam) (noting that an ALJ may consider reports and assessments of state agency physicians as expert opinions and finding that the ALJ's decision was supported by substantial evidence because the ALJ "arrived at his decision after considering the record in its entirety and did not rely solely on the opinion of the state agency physicians.").

### 1. Substantial evidence supports the ALJ's decision to give little weight to the opinion of Dr. Frederic Woriax.

On October 17, 2011, for purposes of Mr. McClung's disability evaluation, Dr. Fredric Woriax completed a pre-printed two-page social security disability questionnaire provided by Mr. McClung's attorney. (Doc. 6-10, p. 28). Dr. Woriax opined that Mr. McClung is disabled because of brittle diabetes. (Doc. 6-10, p. 28). Dr. Woriax explained that Mr. McClung's "condition is one in which his glucose drops precipitously low randomly. He requires frequent glucose monitoring [and] resuscitative efforts to get his glucose up to normal." (Doc. 6-10, p. 28). Dr. Woriax stated that Mr. McClung "would benefit from temporary disability until it can be further ascertained by an endocrinologist whether his condition would require permanent disability." (Doc. 6-10, p. 29).

The ALJ gave little weight to Dr. Woriax's opinion because:

> at the time, he [Dr. Woriax] had seen the claimant only three times; and he acknowledged that the claimant's condition had not been fully evaluated.  Further a statement by a medical source that the claimant is "disabled" or "unable to work" does not mean that the claimant will be found disabled as this is an opinion reserved to the Commissioner as stated in 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1).

(Doc. 6-3, p. 64).   Substantial evidence supports the ALJ's treatment of Dr. Woriax's opinion.

In his brief, Mr. McClung states that Dr. Woriax treated him "numerous times during three years at the Mary J. Weston Medical Center (WMC) from 6/16/09 to 6/5/12."  (Doc. 9, p. 22).   The administrative record provides little support for Mr. McClung's assertion.   Although Mr. McClung sought care at WMC in 2009 and 2010, the records do not indicate that Dr. Woriax was his treating physician during those visits.  (Doc. 6-9, pp. 64-70).[3]

Dr. Woriax indicated on a questionnaire that he completed for Mr. McClung that he first saw Mr. McClung as a patient on December 29, 2010.  (Doc. 6-10, pp. 28-29).   When Mr. McClung saw Dr. Woriax on December 29, 2010, Mr. McClung sought a prescription for insulin.  (Doc. 6-9, p. 50).   Dr. Woriax diagnosed Mr. McClung with "benign essential hypertension" and "diabetes mellitus poorly controlled."  (Doc. 6-9, p. 52).   He prescribed Mr. McClung

---

[3] The provider signature on most of the WMC records is illegible.  A report of test results that is contemporaneous with one of Mr. McClung's visits to WMC states that Dr. Schlueter ordered the tests.  (Doc. 6-9, pp. 64, 72-73).

medication to address his diabetes and suggested a "lipid profile diet and exercise." (Doc. 6-9, p. 52). Under "practice management," Dr. Woriax noted "low complexity decisions." (Doc. 6-9, p. 52).

Mr. McClung saw other providers at WMC, but the record indicates that Mr. McClung did not return to Dr. Woriax for a thorough examination until October 3, 2011. (Doc. 6-10, p. 62).[4] Once again, Mr. McClung wanted to refill his insulin prescription. Dr. Woriax noted that Mr. McClung had poorly controlled diabetes, diabetic hypoglycemia, and benign essential hypertension. (Doc. 6-10, p. 63). Dr. Woriax examined Mr. McClung on October 17, 2011 before he completed Mr. McClung's disability questionnaire. (Doc. 6-10, pp. 61-62).

Therefore, the administrative record demonstrates that Dr. Woriax examined Mr. McClung three times before Dr. Woriax completed a disability questionnaire on behalf of Mr. McClung.[5]

The ALJ articulated good cause for rejecting Dr. Woriax's opinion. Dr. Woriax explained that Mr. McClung's diabetes required further evaluation and that Mr. McClung "would benefit from temporary disability until it can be further

---

[4] There is a brief notation in Mr. McClung's records that states that he saw Dr. Woriax on January 28, 2011. (Doc. 6-9, p. 60).

[5] Dr. Woriax indicated that he had seen Mr. McClung three times before completing the questionnaire. (Doc. 6-10, p. 28). The record also suggests that Mr. McClung saw Dr. Woriax on October 5, 2011 when Mr. McClung brought disability papers to Dr. Woriax. (Doc. 6-10, p. 62). According to his medical records, Mr. McClung saw Dr. Woriax again in February, March, and June, 2012. (Doc. 6-10, pp. 59-60). These three visits post-date Dr. Woriax's completion of the October 17, 2011 SSD questionnaire.

ascertained by an endocrinologist whether [Mr. McClung's] condition would require permanent disability." (Doc. 6-10, p. 29). This statement contradicts Dr. Woriax's opinion that Mr. McClung is disabled "indefinitely" because of his brittle diabetes. (Doc. 6-10, p. 28). Dr. Woriax saw Mr. McClung before Mr. McClung's treatment for diabetes stabilized. As the ALJ explained, treatment notes following Dr. Woriax's October 2011 evaluation of Mr. McClung indicate that when Mr. McClung moved from insulin syringes to a preloaded insulin pen and adjusted his diet, his diabetes was "generally managed." (Doc. 6-3, p. 63; *see* Doc. 6-11, pp. 20, 22-23, 25 28, 30 32, 34).

Because Dr. Woriax's opinion is internally inconsistent and because medical records that post-date Dr. Woriax's opinion reflect that Mr. McClung's diabetes was uncomplicated and under moderate control with regular testing and proper insulin dosing, the ALJ did not err in assigning little weight to Dr. Woriax's opinion. *See* 20 C.F.R. § 404.1527(c)(3) (The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *Crawford*, 363 F.3d at 1159-61 (finding that substantial evidence supported the ALJ's decision to discredit the opinions of the claimant's treating physicians where those physicians' opinions regarding the claimant's disability were inconsistent

with the physicians' treatment notes and unsupported by the medical evidence); *Whitton v. Comm'r of Soc. Sec. Admin.*, --- Fed. Appx. ----, 2016 WL 558591, at *4 (11th Cir. Feb. 12, 2016) (finding that the ALJ had good cause to reject the treating physician's opinion because of inconsistencies between the opinion and treatment notes). Additionally, opinions such as whether a claimant is disabled "are not medical opinions…but are instead, opinions on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(1); s*ee also* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

## 2. The ALJ properly considered the opinions of examining physician Dr. David Wilson and state agency physician Dr. Robert Heilpern.

Mr. McClung argues that the ALJ erred by assigning less weight to the opinion of examining physician Dr. Wilson and more weight to the opinion of state agency physician Dr. Heilpern. (Doc. 9, pp. 27-30). The Court disagrees.

Dr. Wilson examined Mr. McClung in September 2011 and evaluated Mr. McClung's intelligence in April 2013. (Doc. 6-9, pp. 99-103; Doc. 6-11, pp. 41-42). During the September 2011 examination, Dr. Wilson noted that Mr. McClung said he had never been admitted to a psychiatric hospital or received mental health treatment. (Doc. 6-9, p. 99). Dr. Wilson's notes reflect that Mr. McClung

12

complained that he had trouble working due to his inability to check his blood sugar regularly.  (Doc. 6-9, p. 100).

At the time of the examination, Dr. Wilson described Mr. McClung as "cooperative and respectful with normal speech" and "oriented to time, place person and situation."  (Doc. 6-9, p. 101-103).  Mr. McClung displayed some issues with attention and concentration, and mild problems with short term memory.  (Doc. 6-9, p. 102).  Based on his examination, Dr. Wilson diagnosed Mr. McClung with depressive disorder and estimated borderline intelligence.  (Doc. 6-9, p. 103).  Dr. Wilson concluded that:

> [Mr. McClung] appears to have serious problems related to his diabetes, subsequent to having to have his pancreas removed.  This causes him a great deal of difficulty with his energy and his level of functioning.  He also is very depressed and this would cause him problems in any type of work setting.  He also likely has limitations due to his cognitive level which would restrict his job options.

(Doc. 6-9, p. 103).

In September 2013, Dr. Wilson assessed a full scale IQ score of 73, which placed Mr. McClung in the borderline range of intellectual functioning.  (Doc. 6-11, pp. 41-42).  Dr. Wilson opined that Mr. McClung's medical condition had not improved since September 2011, and "the current testing indicates that he does have significant cognitive deficits which would greatly limit his occupational options.  A particular problem would be the fact that he has extremely slow

processing speed, and this would cause major problems in virtually all job settings." (Doc. 6-11, p. 42).

The ALJ gave Dr. Wilson's opinion less weight because "it is inconsistent with [Mr. McClung's] work history and his treatment records and it is not supported by the evidence as a whole." (Doc. 6-3, p. 64).   The decision of the ALJ to give Dr. Wilson's opinions less weight is supported by substantial evidence.

Dr. Wilson's opinion is inconsistent other treatment records, which do not mention psychiatric symptoms. (Doc. 6-3, p. 14; Doc. 6-9, pp. 21, 50, 56, 96; Doc. 6-10, pp. 36, 76). During an emergency room visit in July 2010, Mr. McClung's mental status was described as normal. (Doc. 6-9, p. 21). In December of 2010, Mr. McClung reported no depression with changes in dietary habits, no lost interest in activities, slightly reduced energy, no trouble with concentration, and slight feelings of hopelessness. (Doc. 6-9, p. 50). May 2011 treatment notes state that Mr. McClung was an alcoholic with "chronic depression associated," however, the record contains no indication that Mr. McClung had limitations related to this impairment, and the record does not suggest any mental health treatment. (Doc. 6-9, pp. 25-26). Treatment notes from June 2011, November 2011, and August 2012 do not indicate depression or other psychiatric disorders. (Doc. 6-9, p. 56; Doc. 6-

10, pp. 36, 74-76).[6]   Therefore, substantial evidence supports the ALJ's decision to give less weight to Dr. Wilson's opinion.  *See e.g.*, *McCloud v. Barnhart*, 166 Fed. Appx. 410 (11th Cir. 2006) ("The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion.").

The ALJ also properly evaluated Dr. Heilpern's opinion.  Pursuant to 20 C.F.R. § 404.1527(e)(2)(i), the ALJ "must consider findings and other opinions of State agency medical and psychological consultants. . . ."  The ALJ compared Dr. Heilpern's opinion to the evidence in the record and determined that Dr. Heilpern's opinion was more credible that Dr. Wilson's opinion.  The ALJ gave significant weight to Dr. Heilpern's opinion based on his finding that Dr. Heilpern's opinion was "supported by the evidence as a whole."  (Doc. 6-3, p. 64).  Dr. Heilpern opined that:

> The claimant can understand, remember, and complete simple tasks. Concentration for detailed tasks would be limited at times by emotional factors.  The claimant can maintain attention sufficiently to complete simple, 1-to-2-step tasks for periods of at least 2 hours, without the need for special supervision or extra work breaks.
>
> The claimant can maintain basic standards of persona[l] hygiene and grooming.  Claimant appears able to complete an 8-hour workday, provided all customary breaks from work are provided.  The claimant would function best with a flexible daily schedule in a well-spaced work setting.   The claimant can tolerate casual, non-intense interaction with members of the general public and coworkers.

---

[6] A treatment note from July 2013 – just after the ALJ issued his opinion – states that Mr. McClung was "[n]egative for anxiety, depression, and psychiatric symptoms."  (Doc. 6-3, p. 14).

Supervision and criticism should be supportive and non-confrontational.

. . . . Changes in the work environment or expectations should be infrequent and introduced gradually.

(Doc. 6-10, p. 26).

Dr. Heilpern's findings are consistent with the overall record, and the ALJ's reasons for assigning greater weight to Dr. Heilpern's opinion than Dr. Wilson's opinion are "explicit, adequate, and supported by substantial evidence in the record." *Wainwright*, 2007 WL 708971, at *2 (substantial evidence supported ALJ's decision to accept opinion of state agency psychologist where the ALJ stated with particularity the reasons for doing so); *see also Osborn v. Barnhart*, 194 Fed. Appx. 654, 668 (11th Cir. 2006) (substantial evidence supported ALJ's decision to credit state agency physician's evaluation over other medical opinions where the claimant failed to produce any evidence from a medical source indicating the limitations his impairments had on his ability to work and where the state agency evaluation was supported by other objective evidence).

**B.    The ALJ did not err when he refused to allow Mr. McClung's mother to testify at the administrative hearing.**

Mr. McClung argues that the ALJ should have allowed his mother to testify at his administrative hearing.  (Doc. 9, pp. 30-31).  Mr. McClung's argument is not persuasive.

Mr. McClung sought to have his mother testify about his problems "thinking and concentrating and following instructions." (Doc. 6-3, p. 88).   In response to the proposed testimony, the ALJ asked Mr. McClung's counsel if Mr. McClung's mother had the medical expertise necessary to analyze medical or mental problems.  (Doc. 6-3, p. 88).  Mr. McClung's counsel replied that Mr. McClung's mother did not have medical expertise.  The ALJ asked Mr. McClung's attorney if he had "anything else you need her to testify about?"  (Doc. 6-3, p. 88).  Mr. McClung's attorney replied that Mr. McClung's mother had no other testimony to provide.  (Doc. 6-3, p. 88).

The ALJ's exclusion of Mr. McClung's mother's testimony does not provide a basis for reversing the ALJ's decision.  The ALJ correctly determined that Mr. McClung's mother does not qualify as an acceptable source under 20 C.F.R. 404.1513(a) and 416.913(a) because she does not fit into any of the specified categories listed in the regulations.[7]  Additionally, the ALJ provided an opportunity

_____

[7] 20 C.F.R. § 416.913(a) provides:

> Sources who can provide evidence to establish an impairment. We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s). See § 416.908. Acceptable medical sources are --
>
> (1) Licensed physicians (medical or osteopathic doctors);
>
> (2) Licensed or certified psychologists. Included are school psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting, for purposes of establishing

for Mr. McClung's mother to offer other testimony that would not be improper opinion evidence.   (Doc. 6-3, p. 88).   Mr. McClung already had offered lay testimony about his ability to think, concentrate, and follow instructions, so his mother's testimony would be cumulative on those topics.  (Doc. 6-3, pp. 86-88).

Because Mr. McClung's counsel did not explain how relevant testimony from Mr. McClung's mother would differ from the evidence already in the record, Mr. McClung has not established that the ALJ's refusal to allow testimony from Mr. McClung's mother prejudiced Mr. McClung's claim.   Absent a showing of prejudice, there is no basis for relief.  *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (an ALJ has a duty to develop a full and fair record, "[h]owever

---

intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3) Licensed optometrists, for purposes of establishing visual disorders only (except, in the U.S. Virgin Islands, licensed optometrists, for the measurement of visual acuity and visual fields only). (See paragraph (f) of this section for the evidence needed for statutory blindness);

(4) Licensed podiatrists, for purposes of establishing impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or the foot and ankle; and

(5) Qualified speech-language pathologists, for purposes of establishing speech or language impairments only. For this source, "qualified" means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence from the American-Speech-Language-Hearing Association.

20 C.F.R. § 416.913(a).

there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record.").

Additionally, as discussed in detail throughout this opinion, the record contained sufficient medical and non-medical evidence for the ALJ to make an informed decision; supplemental lay testimony was not necessary. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The absence of testimony from Mr. McClung's mother does not create an "evidentiary gap[]." *See Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991); *see also Landry v. Heckler*, 782 F.2d 1551, 1554 (11th Cir. 1986) ("Because Landry's claim fails for want of sufficient medical evidence, his assertion that he should have been allowed to produce lay testimony is mooted."); *McCloud v. Barnhart*, 166 Fed. Appx. 410, 417 (11th Cir. 2006) ("When the medical evidence supports the ALJ's determination, the ALJ does not err by refusing to admit lay testimony.").

## C.      Substantial evidence supports the ALJ's determination that Mr. McClung has the RFC to perform light work.

The RFC describes the types of work that a claimant may perform despite severe and non-severe impairments. *Maffia v. Comm'r of Soc. Sec.*, 291 Fed. Appx. 261, 263 (11th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)). The ALJ has the authority to determine a claimant's residual functional capacity, and "the ALJ considers all of the evidence in the record in determining the claimant's RFC."

*Himes v. Comm'r of Soc. Sec.*, 585 Fed. Appx. 758, 764 (11th Cir. 2014).  Here, the ALJ determined that Mr. McClung can perform light work with a number of postural and non-exertional limitations.  (Doc. 6-3, pp. 61-62).  Mr. McClung argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not perform a function-by-function analysis consistent with Social Security Ruling 96-9p.  (Doc. 9, pp. 31-37).

Mr. McClung's argument that the ALJ failed to perform a function-by-function analysis is conclusory.  Mr. McClung's brief cites lengthy portions of a number of decisions, but Mr. McClung does not identify with specificity what the ALJ purportedly overlooked in this case.

In making his decision, the ALJ:

> considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSR's 96-4p and 96-7p.

(Doc. 6-3, p. 62).  In addition to medical and objective evidence, the ALJ considered all opinion evidence submitted in the record.  (Doc. 6-3, p. 62).  The ALJ considered Mr. McClung's testimony regarding his physical and mental impairments, Mr. McClung's medical records (noting a surgery to remove his pancreas and spleen in 2007, reported episodes of hypoglycemia dating back to 2009, diabetes that is at times poorly controlled but has recently been uncomplicated, and no unusual anxiety or depression), and mental health and

ability opinions from Dr. Wilson, Dr. Heilpern, and Dr. Woriax.  (Doc. 6-3, p. 63-64).

The ALJ's decision sufficiently indicates that he considered all of the relevant evidence in arriving at his RFC determination.  *See Carson v. Comm'r of Soc. Sec.*, 440 Fed. Appx. 863, 864 (11th Cir. 2011) ("Following [SSR 96-8p's 'function-by-function'] rubric, the ALJ fully discussed and evaluated the medical evidence, [the claimant's] testimony, and the effect each impairment has on [the claimant's] daily activities."); *Freeman v. Barnhart*, 220 Fed. Appx. 957, 959 (11th Cir. 2007) ("[T]he ALJ complied with SSR 96-8p by considering Freeman's functional limitations and restrictions and, only after he found none, proceeding to express her residual functional limitations in terms of exertional levels.").  Because the ALJ properly considered all records submitted by Mr. McClung and Mr. McClung's testimony, the ALJ's failure to conduct a specific function-by-function analysis is not reversible error.  (Doc. 6-3, pp. 61-65).

> **D.**    **Mr. McClung has not demonstrated that the ALJ is biased.**

A social security claimant is entitled to an impartial ALJ.  *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996) (an ALJ is "duty-bound to develop a full and fair record, [and] he must [also] carefully weigh the evidence, giving individualized consideration to each claim that comes before him"); 20 C.F.R § 404.940 ("An administrative law judge shall not conduct a hearing if he or she is

prejudiced or partial with respect to any party or has any interest in the matter pending for decision.").  An ALJ is entitled to a presumption of impartiality unless a claimant demonstrates a conflict of interest or another specific ground for disqualification.  *See Schweiker v. McClure,* 456 U.S. 188, 195 (1982).  Moreover, there must be convincing evidence that "a risk of actual bias or prejudgment" exists under the circumstances.  *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

Mr. McClung argues that the ALJ is biased against claimants generally, and this bias tainted the ALJ's decision in Mr. McClung's case.  (Doc. 9, p. 37).   Mr. McClung contends that the ALJ is biased against social security claimants because he approves only 36% of the claims he hears while the approval rate for other ALJs in Alabama is 50%.  (Doc. 9, p. 37).  Mr. McClung also asserts that the ALJ:

> conducts adversarial hearings, routinely cherry picks and manipulates facts to support his conclusions, willfully ignores established law, disregards evidence from treating physicians, thwarts meaningful review of his decisions by deliberately failing to develop the evidentiary record, and effectively holds claimants to a higher evidentiary standard than what is set forth by law.

(Doc. 9, p. 39).  Mr. McClung's argument lacks merit.

Though Mr. McClung asserts that the ALJ has engaged in a "pattern of deliberate acts engineered to avoid approving meritorious claims and to support unfavorable decisions," Mr. McClung does not provide sufficient evidence to support this assertion.   (Doc. 9, p. 38).   Mr. McClung's reliance on a prior allegation by his counsel in another case is misplaced.  (Doc. 9, pp. 38-39; citing

*Allenstein v Barnhart,* 419 F. Supp. 2d 1336 (N.D. Ala. 2006)).  In the *Barnhart* case, the Court found that "[s]ince there is nothing to indicate that the record was not properly developed, the court concludes that the plaintiff's allegation of a generalized bias is irrelevant in this particular case."  *Allenstein*, 419 F. Supp. 2d at 1337.

Likewise, in this case, Mr. McClung's disagreement with the ALJ's decision does not demonstrate prejudice.  As the Court explains elsewhere in this opinion, the ALJ's decision is supported by substantial evidence.  *See supra* pp. 8-21; *see infra* pp. 23-34.  Because the ALJ properly considered the evidence in the record, and Mr. McClung failed to provide evidence of a conflict of interest or a reason for disqualification, Mr. McClung cannot demonstrate that the ALJ was biased.  *See Bailey v. Colvin*, 2015 WL 661375, at *6 (N.D. Ala. Feb. 17, 2015) ("A showing of prejudice 'at least requires a showing that the ALJ did not have all of the relevant evidence before him, or that the ALJ did not consider all of the evidence in the record in reaching his decision.'") (quoting *Kelley v. Heckler,* 761 F.2d 1538, 1540-41 (11th Cir. 1985)).

**E.    Substantial evidence supports the ALJ's decision that Mr. McClung's impairments do not meet or medically equal Listing 12.05(C) or 12.05(D).**

Mr. McClung argues that he meets or medically equals Listing 12.05(C) or 12.05(D).  "To meet Listing 12.05 for [intellectual disability], 'a claimant must at

least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22.'" *Perkins v. Comm'r of Soc. Sec.*, 553 Fed. Appx. 870, 872 (11th Cir. 2014) (quoting *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).[8] "A claimant must meet these diagnostic criteria in addition to one of the four sets of criteria found in 12.05(A), (B), (C), or (D) in order to show that his impairments are severe enough to meet or equal Listing 12.05." *Id.* (citing 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.00(A)).  Listing 12.05(C) requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C).  Listing 12.05(D) requires:

> [a] valid verbal, performance or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(D).

---

[8] Effective September 3, 2013, the Commissioner replaced the term "mental retardation" with "intellectual disability" in Listing 12.05, but the change did not affect the substance or requirements of the listing. *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499, 46,501 (Aug. 1, 2013).

Mr. McClung argues that his low IQ combined with "depression and severe uncontrolled brittle type 2 diabetes s/p total pancreatectomy, splenectomy with repeated episodes of seizures and loss of consciousness due to hypoglycemia" meets or medically equals Listing 12.05(C) or 12.05(D). The Court disagrees.

The record does not contain evidence that would enable Mr. McClung to meet his burden of proving that his intellectual deficits meet or medically equal Listing 12.05(C) or 12.05(D). Mr. McClung's full scale IQ score of 73 does not meet the criteria for Listing 12.05(C) or 12.05(D), which both require a full scale IQ score of 60 through 70.[9] *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in *Sullivan*).

To support his argument, Mr. McClung cites his grades in school. (Doc. 9, p. 41; Doc. 6-7, pp. 57-60). Mr. McClung did not attend special education classes, and he did not testify that his poor grades were connected to an intellectual disability. (Doc. 6-7, pp. 3-4; Doc. 6-9, p. 100). Mr. McClung thought he was doing "pretty good" in school, and he only needed half a credit to pass but got discouraged and did not finish high school. (Doc. 6-9, p. 100). Mr. McClung has

---

[9] Mr. McClung references his processing speed subset score of 68. (Doc. 9, p. 42). Mr. McClung cites no authority to support an argument that this processing speed subset score satisfies the requirement of a full scale IQ score between 60 and 70.

not demonstrated how his school records establish that he had sub-average intellectual functioning with deficits in adaptive functioning before age 22.   *See Perkins*, 553 Fed. Appx. at 870.

Mr. McClung also relies on a psychological evaluation performed by Dr. David Wilson.   (Doc. 9, p. 41).   Dr. Wilson diagnosed Mr. McClung with estimated borderline intelligence, not intellectual disability.   (Doc. 6-9, p. 103). The lack of a diagnosis that matches the language of 12.05 combined with the lack of a valid IQ score supports the ALJ's decision that Mr. McClung's intellectual limitations do not meet or medically equal Listing 12.05.   *See Smith v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 894, 897-98 (11th Cir. 2013) ("The fact that none of the other treatment records diagnosed Smith with [intellectual disability] supports the ALJ's rejection of the IQ test results and supports the conclusion that Smith did not meet or equal the criteria of Listing 12.05(C).");   *Jordan v. Comm'r of Soc. Sec.,* 470 Fed. Appx. 766, 768-69 (11th Cir. 2012) (noting the claimant's diagnosis of borderline intellectual functioning, which "is mutually exclusive of [intellectual disability]," supported the conclusion that the claimant's impairments did not satisfy the requirements of Listing 12.05).

Additional evidence shows that Mr. McClung's impairments did not satisfy or equal the diagnostic description in the introduction to Listing 12.05.   For example, during his evaluation with Dr. Wilson, Mr. McClung was able to count

down from 20 with no errors, perform serial 3's to 24 with no errors, perform simple math problems, recall 2 of 3 items after five minutes, and reproduce four digits forward and four digits backward.  (Doc. 6-9, p. 102).  Also, Mr. McClung's work history as a truck loader and dryer operator conflicts with his allegation that he suffers from deficits in adaptive functioning.  (Doc. 6-7, p. 4).  *See e.g.*, *Harris v. Comm'r of Soc. Sec.*, 330 Fed. Appx. 813, 815 (11th Cir. 2009) ("Substantial evidence supports the ALJ's denial of disability benefits because Harris did not meet the requirements of Listing 12.05. He was never diagnosed with mental retardation, only borderline intellectual functioning. The ALJ found that Harris did well in special education classes and was able to hold several jobs, which did not indicate the type of deficit in adaptive functioning required for mental retardation. Harris could dress and bathe himself, take care of his personal needs, and manage money. Likewise, Harris could read, communicate effectively, and do simple math.").

### F.     The ALJ properly considered Mr. McClung's severe impairments.

At step two, the ALJ concluded that Mr. McClung has the severe impairments of diabetes mellitus and depressive disorder.  (Doc. 6-3, p. 58).  Mr. McClung argues that the ALJ erred by failing to find other severe impairments including low IQ, borderline intelligence with processing speed in the mildly

retarded range, and repeated episodes of seizures and loss of consciousness due to hypoglycemia.  (Doc. 9, p. 43).  Mr. McClung's argument fails for two reasons.

First, "step two requires only a finding of 'at least one' severe impairment to continue on to the later steps." *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 Fed. Appx. 949, 951 (11th Cir. 2014) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)); *see also Packer v. Comm'r of Soc. Sec.*, 542 Fed. Appx. 890, 892 (11th Cir. 2013) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied. Indeed, since the ALJ proceeded beyond step two, any error in failing to find that Packer suffers from the additional severe impairments of degenerative joint disease of the right knee or varicose veins would be rendered harmless.").  Therefore, the ALJ's failure to identify other alleged severe impairments – if there are any – is harmless error.

Second, Mr. McClung alleged that he was disabled and unable to work because of his diabetes and related blood sugar problems and because he had his pancreas and spleen removed.  (Doc. 6-3, pp. 78-79; Doc. 6-7, p. 3).  Because Mr. McClung did not raise other impairments as a basis for his disability, the ALJ had no obligation to consider them.  *See Robinson v. Astrue,* 365 Fed. Appx. 993, 995 (11th Cir. 2010) (finding that the claimant "did not allege that she was disabled due to CFS either when she filed her claim or at her May 2006 hearing.  Consequently,

the ALJ had no duty to consider Robinson's CFS diagnosis.").[10]  The ALJ gave Mr.

McClung the benefit of the doubt because the ALJ concluded that Mr. McClung

had not only the severe impairment of diabetes that Mr. McClung identified (Doc.

6-7, p. 3) but also the severe impairment of depressive disorder.

### G. The ALJ properly considered the combined effects of Mr. McClung's impairments.

When an ALJ finds several impairments, the ALJ must consider the

impairments in combination.  The Eleventh Circuit has held that an ALJ satisfies

this duty by stating that he considered whether the claimant suffered from any

impairment or combination of impairments.  *See e.g.*, *Wilson v. Barnhart,* 284 F.3d

1219, 1224-25 (11th Cir. 2002) (reversing a district court's determination that an

ALJ did not consider or discuss the cumulative effects of a claimant's impairments

where the ALJ explicitly stated that the claimant did not have "an impairment or

combination of impairments listed in, or medically equal to one listed" in the

regulations); *Hutchinson v. Astrue,* 408 Fed. Appx. 324, 327 (11th Cir. 2011)

(finding that the ALJ's statement that [claimant] "did not have an 'impairment,

individually or in combination' that met one of the listed impairments...shows that

the ALJ considered the combined effects of [claimant's] impairments during her

evaluation"); *see also Robinson v. Comm'r of Social Sec.*, --- Fed. Appx. ----, 2016

---

[10] Although the ALJ had no duty to consider Mr. McClung's depression, the ALJ found at step two that Mr. McClung's depressive disorder is a severe impairment.  (Doc. 6-3, p. 58).

WL 2610628, at *2 (11th Cir. May 6, 2016) ("[W]e may conclude that an ALJ properly considered a combination of impairments if the ALJ stated that the [claimant] is not suffering from any impairment or a combination of impairments of sufficient severity.").

In this case, the ALJ explicitly stated that Mr. McClung does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  (Doc. 6-3, p. 59).  This statement demonstrates that the ALJ considered the combined effects of Mr. McClung's impairments.

### H.    The ALJ properly evaluated Mr. McClung's credibility.

"To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.'" *Zuba-Ingram v. Commissioner of Social Sec.*, 600 Fed. Appx. 650, 656 (11th Cir. (2015) (quoting *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam)).  A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).  If the ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for

doing so." *Wilson,* 284 F.3d at 1225.  "While an adequate credibility finding need not cite particular phrases or formulations[,] broad findings that a claimant lacked credibility . . . are not enough. . . ." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam); *see* SSR 96-7P, 1996 WL 374186 at *2 ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight").

Mr. McClung reported that his diabetes and chronic blood sugar problems are the only issues that would prevent him from working.  (Doc. 6-3, p. 79).  Mr. McClung testified that his blood sugar will drop if he is active or gets hot.  When that happens, he becomes confused, and it takes him awhile to elevate his blood sugar and become oriented.  (Doc. 6-3, pp. 78-79).  He testified that it takes 30-45 minutes for him to be able to return to his previous activity when his blood sugar drops because of dizziness and blurred vision.  (Doc. 6-3, p. 85).  Mr. McClung stated that he blacked out three times at his previous job, but a friend "covered it up."  (Doc. 6-3, p. 86).  Mr. McClung explained that he had to urinate frequently, "about 12, 15 times a day."  (Doc. 6-3, p. 86).  He also testified that he cannot stand too long without getting "dizzy a little bit."  (Doc. 6-3, pp. 86-87).  He testified that when his sugar drops, he may doze off for five or ten minutes, and

that these episodes happen between five and six times a day.   (Doc. 6-3, p. 87).

Mr. McClung stated that he cannot sufficiently focus to watch a two hour movie.

(Doc. 6-3. pp. 87-88).   Mr. McClung testified that none of his doctors has

specifically restricted his functioning.  (Doc. 6-3, p. 78).

The ALJ summarized Mr. McClung's testimony.  (Doc. 6-3, pp. 62-63).

The ALJ properly found that Mr. McClung's "medically determinable impairments

could reasonably be expected to cause the alleged symptoms."  (Doc. 6-3, p. 63).

The ALJ then rejected Mr. McClung's testimony regarding "the intensity,

persistence and limiting effects of these symptoms."   (Doc. 6-3, p. 63).

Substantial evidence supports the ALJ's credibility finding.

With respect to Mr. McClung's testimony about the alleged disabling nature

of his diabetes, the ALJ explained:

> [Mr. McClung] became diabetic secondary to removal of his pancreas
> and spleen in 2007.  However, he recovered well and returned to work
> and treatment records indicated that his diabetes was uncomplicated
> and under moderate control (Exhibits 1F-6F, 11F, 18F and 21F).  The
> claimant has reported episodes of hypoglycemia since 2009 that have
> required occasional emergency room treatment, more so during the
> summer of 2010, and his diabetes has been considered poorly
> controlled at times.  However, treatment records indicated that the
> claimant was only marginally complian[t] with medication as he took
> insulin only when he thought he needed it; he was prescribed
> metformin but stopped taking it when he did not tolerate it well and he
> had difficulty with insulin syringes and needles and was changed to a
> pre-loaded pen (Exhibits 7F-9F and 19F).  More recent treatment
> records generally show the claimant's diabetes to be uncomplicated
> and the two occasions he reported to the emergency room for
> hypoglycemia in 2011 and 2012, he recovered quickly with treatment.

> March 2013 treatment records indicate that although the claimant has hypoglycemic episodes, his condition is generally managed with diet and insulin and he is negative for other symptoms (Exhibits 19F-23F). According[ly], the evidence shows that the claimant's low blood sugar primarily occurred due to poor control secondary to guessing as opposed to measuring.  He alleged an inability to pay for test strips but he admitted to smoking, which is comparable in cost to his needed test strips.  Although the claimant was given information regarding a prescription assistan[ce] program (Exhibit 21F), there is no indication that he followed through to obtain low or no cost medical supplies.  When the claimant began measuring his blood sugar levels, the diagnoses generally changed from diabetes mellitus, poorly controlled to diabetes mellitus, uncomplicated and he testified that since monitoring his blood sugar regularly, he had experienced a problem only one time.

(Doc. 6-3, pp. 63-64).

When evaluating Mr. McClung's testimony, the ALJ reviewed the medical evidence in the record.   (Doc. 6-3, pp. 63-64).   *See* 20 C.F.R. §§ 404. 1529(c)(3)(iv), 416.929(c)(3)(iv).   Mr. McClung's medical records support the ALJ's conclusion that although Mr. McClung has medical issues related to his diabetes and hypoglycemia, many of Mr. McClung's symptoms are the result of poorly controlled diabetes caused by Mr. McClung's failure to test his blood sugar levels properly and take prescribed amounts of insulin.  (Doc. 6-3, p. 63).   The record reflects that in May 2011, Mr. McClung was noted as having "marginal compliance with his insulin."   (Doc. 6-9, p. 35).   Other records note that Mr. McClung has "diabetes mellitus type 2 that seems to be poorly controlled." (Doc. 6-9, p. 82; Doc. 6-10, p. 63; *see also* Doc. 6-9, p. 52).   According to a medical

record from February 2011, Mr. McClung acknowledged that his blood sugar checks were high one minute and low the next due in part to his difficulty managing insulin syringes. (Doc. 6-9, p. 57). More recent medical records for Mr. McClung list his condition as "diabetes mellitus type 2, uncomplicated" instead of describing this condition as poorly controlled. (Doc. 6-3, pp. 20, 26; Doc. 6-11, p. 22). The ALJ accounted for Mr. McClung's diabetes in his RFC analysis by providing that Mr. McClung could take work breaks to check his blood sugar and then eat or administer medications. (Doc. 6-3, p. 61).[11]

Accordingly, substantial evidence supports the ALJ's adequate and explicit reasons for rejecting Mr. McClung's subjective complaints of pain. *See e.g., Duval v. Comm'r of Soc. Sec.*, 628 Fed. Appx. 703, 712 (11th Cir. 2015) ("The ALJ explained that Mr. Duval's testimony was not credible to the extent it was unsupported by the objective medical evidence and then discussed at length why similar opinions from Mr. Duval's treating medical providers were unsupported by the record. From this discussion, we can clearly infer what testimony from Mr. Duval the ALJ found lacking in credibility and why it was discredited."); *Brown v. Comm'r of Soc. Sec.*, 442 Fed. Appx. 507, 514 (11th Cir. 2011) (the ALJ

---

[11] Medical records in the administrative record that post-date the ALJ's decision state that Mr. McClung's diabetes "has been managed with diet and insulin." (Doc. 6-3, p. 20 (October 2013); Doc. 6-3, p. 26 (January 2014); Doc. 6-3, p. 35 (June 2014)).

sufficiently assessed the credibility of the claimant's testimony where the ALJ thoroughly discussed the claimant's allegations in light of the record of a whole).

## V.   CONCLUSION

For the reasons discussed above, the Court finds that the ALJ's decision is supported by substantial evidence, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Accordingly, the Court affirms the Commissioner.  The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 16, 2016.

MADELINE HUGHES HAIKALA
UNITED STATES DISTRICT JUDGE